DUFFY (UNITED STATES v.). See Case No. 14,998.

---

## Case No. 4,120.

### In re DUGAN.

[2 Lowell, 367.][1]

District Court, D. Massachusetts. Dec., 1874.

EXTRADITION—COMPLAINT BEFORE JUDGE—JURISDICTION—EVIDENCE —ACCUSED NOT COMPETENT WITNESS.

1. Where there is an application for extradition, sustained by complaint on oath, it is not for the judge to consider whether or not a foreign government has authorized the application: he has only to examine the evidence of criminality; and, if he deems it sufficient to sustain the charge, to certify the same to the secretary of state.

2. The treaty of extradition with Great Britain does not give the accused the right to be confronted with the witnesses against him: the evidence may be in the form authorized in the country whence it comes, and, in substance, sufficient to warrant action in the country whose action is invoked.

3. The testimony of the accused is not admissible in a case of extradition, tried by a judge of the United States, though he is sitting in a state where such evidence would be received.

[Proceeding for the extradition of J. Dugan.]

W. A. Hayes, Jr., Asst. Dist. Atty., for complainant.

C. J. Brooks, for defendant.

LOWELL, District Judge. The judge has nothing to do with the question whether the government of the foreign country has duly authorized an application for the extradition to be made. The law is, that, when complaint is made on oath, the judge is to examine the evidence of criminality; and, if he deems it sufficient to sustain the charge, shall certify the same to the secretary of state, that a warrant may issue upon the requisition of the proper authorities of the foreign governments. The requisition is to be made to the executive department, and, in the natural order of things, would be made after the evidence is taken and certified. If the authorities of the foreign government should find, on the examination of the evidence, that it does not make out a case which they choose to press, they will make no requisition. And the statute gives them two months in which to complete their action upon the matter.

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

A complaint was duly made to me, on oath, against the prisoner; charging him with having committed the crime of murder on one Charles Robinson, at Clare, in Nova Scotia, in October last. At the hearing, depositions taken before the coroner in the county where the offence is said to have been committed were given in evidence, with a certificate by the vice-consul of the United States at Halifax that they are duly and legally authenticated, so as to entitle them to be received in evidence to support the charge of murder, and for similar purposes, by the tribunals of Great Britain and its dependencies.

It is objected that the prisoner has the right to be confronted with the witnesses against him. I understand this objection to be founded in part upon the language of the treaty, which says that the offender shall be delivered up, only "upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial, if the crime or offence had there been committed." This refers to what may be called the degree of proof, and not to the mode and form in which it shall be given. The statutes of 1848 and 1860 take this view of the matter, and require us to admit depositions and other papers, or copies thereof, duly authenticated, if they would be received for similar purposes in the tribunals of the country where the crime was committed. This is a reasonable and almost necessary arrangement The evidence may be in form what the law of the country from which it comes authorizes, and in substance enough to warrant action in the country whose action is invoked. If this were not so, still a law of congress, constitutionally valid, must govern the courts of the United States, whether it conforms to the treaty or not.

The objection rests in part upon the language of the act of 1860 (12 Stat. 84), which authorizes the use of depositions and other papers, if they could be received for similar purposes by the tribunals of the foreign country from which the accused shall have escaped. It was argued that, by the English law, depositions taken ex parte could not be received on a trial for murder. I have not undertaken to examine the English law on this subject, with care; but my impression is, that there are many authorities which hold that such depositions, taken before the coroner at an inquest, are admissible on the trial, though those taken before a justice are not. But I know that some of the best writers on the subject condemn the practice, and I do not rest my decision upon it. The statute does not refer to evidence admissible at the final trial of the cause, but to such as would be received on a preliminary examination; and the consul has certified that these papers are so admissible, and I know of no reason to doubt it.

It is further objected that the certificate of the consul is too general; not designating the

papers, excepting that they are· annexed, which leaves open the question whether all these papers were annexed when the certificate was attached. The depositions purport to be the original evidence given before the coroner and his jury, and taken down by him; and, besides the general certificate of the consul he gives another, that C. H. Oakes was and is a coroner, and that the annexed verdict and depositions are the originals, &c. On examination of the two certificates and the annexed papers, I think they are sufficiently authenticated. It is a question chiefly of fact, in each case, whether the authentication is regular; but I may observe that it was held in Farez' Case [Case No. 4,645], not to be essential that each deposition should be separately certified, if the court could ascertain with reasonable certainty what papers were referred to in the certificate.

The defendant's counsel intimated that he might desire to examine his client as a witness, if his evidence were admissible. In Farez' Case [supra], the learned judge held that a prisoner whose extradition was demanded under the convention with Switzerland might be examined in his own behalf, because that convention referred the courts to the laws of the country where the examination was had for their guide in conducting it, and by this reference it incorporated the criminal law of the state of New York into its mode of proceeding. No doubt the prisoner is entitled to be heard, and to produce such evidence as would be admissible here; but the admissibility of the evidence must be governed, as it seems to me, not by the laws of the state where the magistrate happens to sit, unless he is a magistrate of the state, but by those which govern his conduct in all other criminal cases. As my powers are derived from the United States, and my action is governed by acts of congress, so far as they apply, I do not feel at liberty to adopt any other rule than that which governs the courts and magistrates of the United States. I should be glad to receive this evidence, which one branch of congress has, twice at least, expressed itself in favor of admitting, but cannot find it in my power to admit it. I do not understand, however, that I am shutting out evidence of any special importance in this case. I do not wish it to be understood that I should not likewise feel bound to admit for the defendant any evidence, whether certified by the consul or not, if it were sufficiently authenticated. which, by the laws of the place where the evidence against him was taken, would be admitted for similar purposes.

It only remains to say that I deem the evidence of the defendant's criminality to be sufficient to require me to certify the same to the secretary of state. I decided in Kelley's Case [Case No. 7,655] that the crime of manslaughter is not within the treaty, and there is some slight evidence tending to show that this may turn out to be such a case; but I think that the whole evidence taken together is clearly such as would require, in a domestic case, that the prisoner should be committed on the higher charge. Indeed, I do not understand that any serious question is made · on this point by the learned counsel for the defence. Certificate accordingly.